UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

TROY WETZEL, EXTREME
FISHING, LLC AND A CLASS OF
SIMILARLY SITUATED INDIVIDUALS AND
ENTITIES, Plaintiffs

Versus

TRANSOCEAN, BP LLC., "A, B, AND C
INSURANCE COMPANIES AS INSURERS OF
TRANSOCEAN, AND "X, Y, AND Z" INSURANCE
COMPANIES AS INSURERS OF BP, LLC.

### CLASS ACTION COMPLAINT FOR DAMAGES

The complaint of Troy Wetzel and Extreme Fishing, LLC on behalf of themselves and all other similarly situated individuals and entities respectfully represents that:

1.

Plaintiff, Troy Wetzel, sues individually and as the designated representative of Louisiana Fishing, LLC. The plaintiff has operated a commercial fishing operation out of Venice, Louisiana for several years. A licensed commercial fisherman, he regularly conducts charter fishing and diving trips in the Gulf around

the Deepwater Horizon oil drilling rig and numerous oil drilling rigs in the area now covered by the oil slick.

Pursuant to Rule 23 of the Federal Rules of Civil Plaintiff, Troy Wetzel and Extreme Fishing, LLC also bring this action on behalf of all other similarly situated individuals and entities who have suffered or will suffer damages as a result of the recent massive oil contamination in the Gulf of Mexico and environs.

2.

Made defendants herein are:

(A) **TRANSOCEAN, LTD,** hereinafter referred to as "Transocean," a foreign corporation doing business in the State of Louisiana. At all times pertinent hereto, defendant, Transocean was operating the Deepwater Horizon floating drilling rig;

(B) **BP, PLC**, hereinafter referred to as "BP," a foreign corporation doing business in the State of Louisiana. At all times pertinent hereto, defendant BP was leasing the Deepwater Horizon floating drilling rig from defendant, Transocean;

(C) "A , B, and C Insurance Companies" which provided policy(ies) of insurance for defendant Transocean covering all losses complained of herein: and,

(D) "X, Y and Z Insurance Companies" which provided policy(ies) of insurance for defendant BP covering all losses complained of herein.

3.

The jurisdiction of this Honorable Court is based upon the provisions of general maritime law as supplemented by the relevant parties of Louisiana law and federal statutes. Venue is proper in this District as it is where the conduct complained of herein occurred and is also where the injury occurred.

4.

The DEEPWATER HORIZON was a floating oil rig owned by defendant Transocean and operated by defendant BP approximately 50 miles southeast of Venice, Louisiana in the Gulf of Mexico. At approximately 10 p.m. on April 20, 2010, while the vessel, DEEPWATER HORIZON, was performing drilling operations for crude oil off the coast of Louisiana, an explosion occurred on the vessel, causing its crewmembers to be thrown overboard and killing at least 11 crewmembers aboard the vessel. The explosion and subsequent fire caused such significant damage to the floating rig structure that it sank in approximately 5,000 feet of water.

5.

When the floating rig sank, it caused the well to release, leak and/or discharge oil directly into the Gulf of Mexico. The well continues to leak and/or discharge approximately 42,000 gallons of oil into the Gulf of Mexico on a daily basis. The defendants have made several unsuccessful attempts to shut down the

leaking oil. The well will continue to leak, release and/or discharge oil on a daily basis until the well is closed—a period that could consume several weeks or months.

6.

Once the crude oil is released into the Gulf, it migrates to the surface where it has formed a massive oil slick which covers more surface area of the Gulf than the State of Rhode Island. The size of the slick has been estimated to be between 600 to 1200 miles in area. An aerial photograph from NASA clearly depicts the vast size of the ominous oil spill as of April 25, 2010.



7.

The oil that is being released is an extremely hazardous and/or toxic substance which poses a significant risk to marine life in the Gulf of Mexico. It is particularly toxic to the marine life at the bottom of the marine food chain such as plankton, shrimp, crabs and other species. These species are plentiful in and

around the other rigs and platforms in the Gulf in proximity to the site of the leaking oil. These species also form the basis of a vast and extensive chain of marine species in the Gulf of Mexico from Venice, Louisiana to the vicinity of Pensacola, Florida. The plaintiffs and the class they seek to represent are dependent on all of the marine species in the food chain for their business, livelihoods, and recreation.

8.

With the gargantuan area contaminated by the oil spill relentlessly growing on a daily basis, Plaintiffs and other class members watch in horror as this grave environmental disaster inexorably moves toward the coastline and imperils the nation's largest remaining wetlands and vulnerable habitat for fish, oysters, crabs, shrimp, birds and other precious wildlife. This ecological calamity may become the worst oil spill ever in the Gulf of Mexico wreaking billions of dollars of damages to Plaintiffs and others similarly situated.

## CLASS ACTION ALLEGATIONS

9.

This action is appropriate for determination through the Federal Class Action Procedure (Fed. R. Civ. P. 23, *et seq.*) and the proposed Class Representative(s) herein seek to represent the following proposed Class:

> All individuals and entities (both natural and juridical) in the States of Louisiana, Mississippi, Alabama and/or Florida which are commercial

fisherman, shrimpers, charter boat operators and/or businesses which incur economic damages as a result of the oil spill from the Deepwater Horizon well.

10.

The proposed Class is so numerous that joinder is impracticable. The disposition of the claims asserted herein through this class action is the most efficient means of handling these claims and the best way to ensure the interest of the class members are preserved and will also benefit the Court.

11.

There is a well-defined community of interest in that the questions of law and fact common to the Class predominate over questions affecting only individual Class members and include, but are not limited to, the following:

a. Whether Defendants negligently maintained and/or operated the drilling Deepwater Horizon drilling platform;

b. Whether Defendants caused and/or contributed to the explosion and resulting continuous oil spill from the Deepwater Horizon drilling platform;

c. Whether Defendants negligently failed to take reasonable measures to contain the oil spill;

d. Whether Defendants collectively and/or individually owed a duty to the Class Representatives and the Class they seek to represent to maintain the

drilling platform and/or to conduct drilling operation in a prudent manner so as to prevent the release and/or leak oil into the surrounding waters.

e. Whether Defendants breached their respective duty owed to the representative plaintiffs and the Class they seek to represent;

f. Whether Defendants were negligent, and whether such negligence was a cause proximate cause of such damages sustained by the Class;

g. Whether Defendants knew or should have known that their activities would have caused such damage to the plaintiffs;

h. Whether Defendants (or any of them) are strictly liable or otherwise at fault that is a proximate cause for the damages complained of herein.

12.

Defendants engaged in a common course of conduct that did not vary from plaintiff to plaintiff, ensuring that common questions of law and fact predominate over questions regarding individual damages and causation, as proof as to one constitutes proof as to all. A class action is the superior to other methods of adjudicating these claims because it is more efficient and economical, and will enable the court to more effectively manage the litigation, to continue to monitor the oil that is being released on a daily basis and to monitor and address the damages caused thereby.

13.

Class Representatives and the Class members have suffered similar harm as a result of Defendants' actions and/or inaction.

14.

Class Representatives will fairly and adequately represent and protect the interests of the members of the Class because their interests do not conflict with the interests of the Class Members they seek to represent, and said Class Representatives know and are prepared to undertake representation of the interests of the entire class. Class Representatives have no claims antagonistic to those of the Class. Class Representatives have retained counsel who are experienced in complex class actions, mass joinder and/or environmental litigation.

15.

A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual litigation of the claims of all Class members is impracticable, as there are believed to thousands of similarly individuals and entities who sustained damages that were proximately caused by the negligence or fault of one or more of the Defendants. Even if every Class Member could afford the cost of individual litigation, the judicial system could not. It would be unduly burdensome to this Court in which individual litigation of thousands of cases would proceed. Individual litigation presents a potential for

inconsistent or contradictory judgments, and the prospect of a race for the courthouse and an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation increases the expense and delay to all parties and the court system in resolving the legal and factual issues common to all claims related to the Defendants' conduct alleged herein. By contrast, a class action presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

16.

The various claims asserted in this action are also certifiable under the provisions of Rules 23(b)(1) and/or 23(b)(3) of the Federal Rules of Civil Procedure because:

a. The prosecution of separate actions by thousands of individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, thus establishing incompatible standards of conduct for Defendants;

b. The prosecution of separate actions by individual Class Members would also create the risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class Members who are not parties to such adjudications and would substantially impair or impede their ability to protect their interests;

17.

Plaintiffs reallege and reaver all of the allegations contained in paragraphs 1 through 17 as if specifically alleged herein.

18.

Commercial fishing in the state of Louisiana alone is a $2.6 billion-a-year industry that supplies up to 25 percent of the seafood to states outside Alaska and Hawaii, according to the Louisiana State University Agriculture Center and the Louisiana Department of Wildlife and Fisheries.

19.

The explosion and resulting release and/or discharge of approximately 42,000 gallons per day were caused by no fault of the plaintiffs and was caused by the Defendants' negligence as more fully set forth herein.

20.

The explosion and resulting release and/or discharge of approximately 42,000 gallons per day and plaintiffs' resulting damages were caused by Defendants' violation of numerous statutes and regulations, including, but not limited to, statutes and regulations issued by the United States Occupational Safety and Health Administration, MMS, United States Coast Guard and of the statue or regulations of the United States whose purpose is the protection of property and persons and/or to prevent or minimize hydrocarbon pollution.

21.

The above-described incidents were proximately caused by the negligence and fault of Defendants, **TRANSOCEAN** and **BP**, through their agents, servants and employees, which are more particularly described as follows:

### NEGLIGENCE OF TRANSOCEAN

a. Failing to provide a competent crew.

b. Failing to properly supervise its employees.

c. Failing to properly train their employees.

d. Failing to provide sufficient personnel to perform operations aboard the vessel.

f. Failing to exercise due care and caution.

g. Failing to avoid this accident.

h. Other acts of negligence which will be shown more fully at trial.

### NEGLIGENCE OF BP

a. Failing to properly train and/or supervise its crew and other employees.

b. Failing to ensure that its crew worked in a safe and prudent manner.

c. Failing to provide employees with a safe place to work which created hazardous conditions;

d. Failing to design, construct, maintain and operate the rig and appurtenances in a reasonable and prudent manner.

e. Failing to exercise due care and caution.

f. Failing to avoid this accident.

g. Failing to use proper and/or proper weighted drilling muds.

h. Other acts of negligence which will be shown more fully at trial.

22.

In the alternative, Plaintiffs reallege and reaver each and every allegation set forth above, as though set forth herein aver the applicability of the doctrine of *Res Ipsa Loquitur*.

23.

Plaintiffs have and will continue to suffer economic damages as a direct and proximate result of Defendants' negligence, complained of herein. As a result of the above-described negligence, the plaintiffs have sustained (and will continue to sustain) economic losses to date and in the future including but not limited to lost profits.

24.

Plaintiffs are entitled to prejudgment interest on their damages from the dates of loss. As to any damages which the Court determines are not properly subject to an award of prejudgment interest, plaintiffs demand interest from the date of judicial demand.

25.

Plaintiffs are entitled to recover all costs of these proceedings, including filing fees, expert witness fees, attorney's fees and other court costs and litigation costs.

WHEREFORE, Plaintiffs, Troy Wetzel and Extreme Fishing, LLC, pray that the defendants, TRANSOCEAN and BP, be duly cited and served with a copy of the Complaint, that this matter be certified as a class action and that after due proceedings are had there be judgment rendered herein in favor of the plaintiffs, and the class they represent, and against defendants, TRANSOCEAN and BP, in an amount sufficient to adequately compensate the plaintiffs, and the class they represent, for their damages together with legal interest thereon from date of judicial demand until paid, for all costs of this suit and for all general and equitable relief.

Dated: April 28, 2010

Respectfully submitted,

_____
Jonathan B. Andry, Esq. (LSBA # 20081)
**THE ANDRY LAW FIRM, LLC**
610 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 586-8899
Facsimile: (504)586-8933

**Domengeaux, Wright Roy & Edwards**
By: */s/ Bob F. Wright* (LSBA # 13691)
James P. Roy (LSBA # 11511)
556 Jefferson Street, Suite 500
P.O. Box 3668
Lafayette, Louisiana 70502-3668
Telephone: (337) 233-3033
Facsimile: (337) 233-2796

**O'Donnell & Associates PC**
Pierce O'Donnell, Esq.
Robert Partain, Esq.
800 Wilshire Boulevard, Suite 500
Los Angeles, California 90017
Telephone: (213) 347-0290
Facsimile: (213) 347-0298

**Fayard & Honeycutt**
Calvin C. Fayard, Jr. (LSBA No. 5486)
519 Florida Avenue, S.W.
Denham Springs, LA 70726
Telephone: (225) 664-4193
Facsimile: (225) 664-6925

**William Strain & Associates**
William S. Strain
422 East Woodstone Court
Baton Rouge, LA 70808
Telephone: (225) 939-0163
Facsimile : (225) 767-8150