UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

TROY WETZEL; EXTREME
FISHING, LLC; AND A CLASS OF
SIMILARLY SITUATED INDIVIDUALS AND
ENTITIES,
    Plaintiffs


 Versus


TRANSOCEAN, LTD.; TRANSOCEAN
OFFSHORE DEEPWATER DRILLING, INC.;
TRANSOCEAN DEEPWATER, INC.;
TRANSOCEAN HOLDINGS, L.L.C.; BP, PLC;
BP PRODUCTS NORTH AMERICA, INC.; BP
EXPLORATION & PRODUCTION, INC.; BP
AMERICA, INC.; HALLIBURTON ENERGY
SERVICES, INC.; WEATHERFORD
INTERNATIONAL, INC. AND/OR
WEATHERFORD INTERNATIONAL, LTD.;
DRIL-QUIP, INC.; CAMERON
INTERNATIONAL CORPORATION;
ANADARKO PETROLEUM CORPORATION;
MITSUI & CO. (USA), INC.; "A, B, AND C"
INSURANCE COMPANIES AS INSURERS OF
TRANSOCEAN; "X, Y, AND Z" INSURANCE
COMPANIES AS INSURERS OF BP; and
TRITON ASSET LEASING GMBH,
    Defendants

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Troy Wetzel and Extreme Fishing, LLC ("Plaintiffs"), individually and on behalf of all other similarly situated individuals and entities (the "Class"), bring this action against the defendants identified below ("Defendants"), and respectfully represent that:

### INTRODUCTION

1.

This is a class action, brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, to recover on behalf of Plaintiffs and the Class for damages suffered and damages they will suffer as a result of the recent massive oil contamination in the Gulf of Mexico and environs caused by the explosion and subsequent sinking of the oil rig Deepwater Horizon ("Deepwater Horizon") off the coast of Louisiana on April 20, 2010.

2.

The sinking of the Deepwater Horizon released, leaked and/or discharged oil directly into the Gulf of Mexico. The well continues to leak and/or discharge approximately 42,000 gallons of oil into the Gulf of Mexico on a daily basis. The size of the slick has been estimated to be between 600 to 1200 miles in area. The oil spill has already caused detrimental effects upon the Gulf of Mexico's and Louisiana's marine environments, coastal environments and estuarine areas. The

Plaintiffs and the Class they seek to represent are dependent on all of the marine species in the food chain for their business, livelihoods, and recreation.

## JURISDICTION AND VENUE

### 3.

The jurisdiction of this Honorable Court is based upon the provisions of general maritime law. Venue is proper in this District as it is where the conduct complained of herein occurred and is also where the injury occurred.

## PARTIES

### 4.

Plaintiff Troy Wetzel, sues individually and as the designated representative of Extreme Fishing, LLC. The Plaintiff has operated a commercial fishing operation out of Venice, Louisiana for several years. A licensed commercial fisherman, he regularly conducts charter fishing and diving trips in the Gulf around the Deepwater Horizon oil drilling rig and numerous oil drilling rigs in the area now covered by the oil slick.

### 5.

Made Defendants herein are:

(A) **Transocean, Ltd.** ("Transocean"), a foreign corporation authorized to do and doing business in this state and judicial district. At all times pertinent hereto, Defendant was operating the Deepwater Horizon floating drilling rig;

(B) **Transocean Offshore Deepwater Drilling, Inc.** ("Transocean"), a foreign corporation authorized to do and doing business in this state and judicial district. At all times pertinent hereto, Defendant was operating the Deepwater Horizon floating drilling rig;

(C) **Transocean Deepwater, Inc.** ("Transocean"), a foreign corporation authorized to do and doing business in this state and judicial district. At all times pertinent hereto, Defendant was operating the Deepwater Horizon drilling rig;

(D) **Transocean Holdings, L.L.C.** ("Transocean"), may be served by serving its President, John H. Briscoe, at 4 Greenway Plaza, Suite 700, Houston, Texas 77046.

(E) **BP, PLC** ("BP"), a foreign corporation authorized to do and doing business in this state and judicial district. At all times pertinent hereto, Defendant was leasing the Deepwater Horizon drilling rig from Defendants Transocean, and managing, controlling, supervising and directing the operation and well drilling and completion activities of the DEEPWATER HORIZON;

(F) **BP Products North America, Inc.** ("BP"), a foreign corporation authorized to do and doing business in this state and judicial district. At all times pertinent hereto, Defendant was leasing the Deepwater Horizon drilling rig from Defendants Transocean, and managing, controlling, supervising and directing the

operation and well drilling and completion activities of the DEEPWATER HORIZON;

(G) **BP Exploration & Production, Inc.** ("BP"), a foreign corporation authorized to do and doing business in this state and judicial district. At all times pertinent hereto, Defendant was leasing the Deepwater Horizon drilling rig from Defendants Transocean, and managing, controlling, supervising and directing the operation and well drilling and completion activities of the DEEPWATER HORIZON;

(H) **BP America, Inc.** ("BP"), a foreign corporation authorized to do and doing business in this state and judicial district. At all times pertinent hereto, Defendant was leasing the Deepwater Horizon drilling rig from Defendants Transocean, and managing, controlling, supervising and directing the operation and well drilling and completion activities of the DEEPWATER HORIZON;

(I) **Halliburton Energy Services, Inc.** ("Halliburton"), a foreign corporation authorized to do and doing business in this state and judicial district. Halliburton was at all times relevant BP's primary cementing specialist, and based upon information and belief, a proximate cause of the blowout, explosion, fire and oil spill was due to the negligence of Halliburton or those for whom it was responsible in inadequately or improperly doing the cement job it was tasked with;

(J) **Weatherford International, Inc. and/or Weatherford International, Ltd.** ("Weatherford"), a foreign corporation authorized to do and doing business in this state and judicial district. Weatherford was at all times relevant BP's primary casing specialist, and based upon information and belief, a proximate cause of the blowout, explosion, fire and oil spill was due to the negligence of Weatherford or those for whom it was responsible in inadequately or improperly doing the casing job it was tasked with;

(K) **Dril-Quip, Inc.** ("Dril-Quip"), a foreign corporation authorized to do and doing business in this state and judicial district. Dril-Quip was at all times relevant the manufacturer, supplier, and an installer of BP's primary ocean floor wellhead, which based upon information and belief, failed to shut in the well and prevent hydrocarbon flowage and ultimate discharge into the Gulf. Such failure to properly operate was due to the negligence of Dril-Quip and/or its strict liability in the design, manufacture, installation and/or maintenance of said wellhead and its appurtenances. Such was a proximate cause of the blowout, explosion, fire and oil spill;

(L) **Cameron International Corporation** ("Cameron"), a foreign corporation authorized to do and doing business in this state and judicial district. Cameron was at all times relevant the manufacturer, supplier, and installer of the well's/rig's blowout prevention system, which based upon information and belief,

6

failed to operate when and as it should have been both upon attempted manual activation and upon failure to activate through the deadman switch system which did not function and shut in the well to prevent hydrocarbon flowage, explosion and/or ultimate discharge into the Gulf. Such failure to properly function was due to the negligence of Cameron and/or its strict liability in the design, manufacture, installation and/or maintenance of said system and its appurtenances. Such was a proximate cause of the blowout, explosion, fire and oil spill, which based upon information and belief, failed to shut in the well and prevent hydrocarbon flowage and ultimate discharge into the Gulf. Such failure to properly operate was due to the negligence of Cameron and/or its strict liability in the design, manufacture, installation and/or maintenance of said wellhead and its appurtenances. Such was a proximate cause of the blowout, explosion, fire and oil spill;

(M) **Anadarko Petroleum Corporation** ("Anadarko"), a foreign corporation authorized to do and doing business in this state and judicial district. Anadarko was at all times relevant a joint venturer, partner, co-owner with BP of the well which blew out and as such shares responsibility and liability with BP as a defendant herein;

(N) **Mitsui & Co. (USA), Inc.** ("Mitsui"), a foreign corporation authorized to do and doing business in this state and judicial district. Mitsui was at all times

7

relevant a joint venturer, partner, co-owner with BP of the well which blew out and as such shares responsibility and liability with BP as a defendant herein;

(O) **Triton Asset Leasing GMBH** ("Triton"), may be served by service through The HAGUE Convention who will in turn serve Robert Bowden, Managing Director at Turmstrasse 30, Zug, ZG 6300, Switzerland, Europe.

(P) "A, B, and C Insurance Companies" which provided policy(ies) of insurance for Defendants Transocean covering all losses complained of herein; and,

(Q) "X, Y and Z Insurance Companies" which provided policy(ies) of insurance for Defendants BP covering all losses complained of herein.

## STATEMENT OF FACTS

### 6.

The Deepwater Horizon was a semi-submersible mobile drilling rig owned by Defendants Transocean and operated by Defendants BP approximately 50 miles southeast of Venice, Louisiana in the Gulf of Mexico. BP is the holder of a lease that allowed it to drill for oil and perform oil-production-related operations at the site of the oil spill. On April 20, 2010, BP operated the oil well that is the source of the oil spill.

7.

At approximately 10 p.m. on April 20, 2010, while Deepwater Horizon, was performing drilling operations for crude oil off the coast of Louisiana, an explosion occurred on the oil rig, causing its crewmembers to be thrown overboard and killing at least 11 crewmembers aboard the vessel. The explosion and subsequent fire caused such significant damage to the Deepwater Horizon's structure that it sank approximately 5,000 feet in the water.

8.

When the Deepwater Horizon sank, it caused the well to release, leak and/or discharge oil directly into the Gulf of Mexico.

9.

The well continues to leak and/or discharge approximately 42,000 gallons of oil into the Gulf of Mexico on a daily basis. The Defendants have made several unsuccessful attempts to shut down the leaking oil. The well will continue to leak, release and/or discharge oil on a daily basis until the well is closed – a period that could consume several weeks or months.

10.

Once the crude oil is released into the Gulf, some of it migrates to the surface where it has formed a massive oil slick, covering a surface area of the Gulf three times the size of the State of Rhode Island.

11.

The oil that is being released is an extremely hazardous and/or toxic substance which poses a significant risk to marine life in the Gulf of Mexico. It is particularly toxic to the marine life at the bottom of the marine food chain such as plankton, shrimp, crabs and other species. These species are plentiful in and around the other rigs and platforms in the Gulf in proximity to the site of the leaking oil. These species also form the basis of a vast and extensive chain of marine species in the Gulf of Mexico from Venice, Louisiana to the vicinity of Pensacola, Florida. The Plaintiffs and the class they seek to represent are dependent on all of the marine species in the food chain for their business, livelihoods, and recreation.

12.

The injuries and damages suffered by Plaintiffs and the Class members were caused by Defendants' violations of numerous statutes and regulations, including, but not limited to, statutes and regulations issued by United States Occupational Safety and Health Administration (OSHA), the MMS United States Coast Guard and of the statutes or regulations of the United States whose purpose is to protect property and persons and/or to prevent or minimize hydrocarbon pollution. These statutes and/or regulations include, *inter alia*, the requirement to test the sub-sea BOPs at regular intervals.

13.

At all times material hereto, the Deepwater Horizon was owned, manned, possessed, managed, controlled, chartered and/or operated by Defendant Transocean and/or Defendant Triton.

14.

At all material times, and in particular prior to the explosion and sinking of the Deepwater Horizon, Defendant Halliburton was a contractor working on the Deepwater Horizon and  was, at all times relevant, BP's primary cementing specialist. Haliburton's conduct was   a proximate cause of the blowout, explosion, fire and oil spill which was due to the negligence of Halliburton or those for whom it was responsible in inadequately or improperly doing the cement job it was tasked with.

15.

Cameron was at all times relevant the manufacturer, supplier, and installer of the well's/rig's blowout prevention system, which based upon information and belief, failed to operate when and as it should have been both upon attempted manual activation and upon failure to activate through the deadman switch system which did not function and shut in the well to prevent hydrocarbon flowage, explosion and/or ultimate discharge into the Gulf. Such failure to properly function was due to the negligence of Cameron and/or its strict liability in the design,

manufacture, installation and/or maintenance of said system and its appurtenances. Such was a proximate cause of the blowout, explosion, fire and oil spill, which based upon information and belief, failed to shut in the well and prevent hydrocarbon flowage and ultimate discharge into the Gulf. Such failure to properly operate was due to the negligence of Cameron and/or its strict liability in the design, manufacture, installation and/or maintenance of said wellhead and its appurtenances. Such was a proximate cause of the blowout, explosion, fire and oil spill.

16.

Dril-Quip was at all times relevant the manufacturer, supplier, and an installer of BP's primary ocean floor wellhead, which based upon information and belief, failed to shut in the well and prevent hydrocarbon flowage and ultimate discharge into the Gulf. Such failure to properly operate was due to the negligence of Dril-Quip and/or its strict liability in the design, manufacture, installation and/or maintenance of said wellhead and its appurtenances. Such was a proximate cause of the blowout, explosion, fire and oil spill.

17.

Weatherford was at all times relevant BP's primary casing specialist, and based upon information and belief, a proximate cause of the blowout, explosion, fire and oil spill was due to the negligence of Weatherford or those for whom it

was responsible in inadequately or improperly doing the casing job it was tasked with

18.

Defendants knew of the dangers associated with deep water drilling and failed to take appropriate measures to prevent damage to Plaintiffs, the Class, Louisiana's and the Gulf of Mexico's marine and coastal environments and estuarine areas, and the Coastal Zone, where Plaintiffs and the Class work and earn a living.

**CLASS DEFINITION**

19.

This action is appropriate for determination through the Federal Class Action Procedure (Fed. R. Civ. P. 23, *et seq.)* and the proposed Class Representative(s) herein seek to represent the following proposed Class:

> All individuals and entities (both natural and juridical) in the States of Louisiana, Mississippi, Texas, Alabama and/or Florida which are commercial fisherman, shrimpers, oystermen, crabbers, charter boat operators which incur economic and/or property damages as a result of the oil spill from the Deepwater Horizon well.

20.

Excluded from the Class are:

a. The officer and directors of any of the Defendants;

b. Any judge assigned to this matter and his or her immediate family;

c. Any attorney involved in this proceeding;, and,

d. Any legal representative, successor or assign of any excluded persons or entities.

## CLASS ACTION ALLEGATIONS

### a. Numerosity of the Class

21.

The proposed Class is so numerous that joinder is impracticable. The disposition of the claims asserted herein through this class action is the most efficient means of handling these claims and the best way to ensure the interest of the Class members are preserved and will also benefit the Court.

### b. Predominance of Common Questions of Law and Fact

22.

There is a well-defined community of interest in that the questions of law and fact common to the Class predominate over questions affecting only individual Class members and include, but are not limited to, the following:

a. Whether Defendants negligently maintained and/or operated the drilling Deepwater Horizon;

b. Whether Defendants caused and/or contributed to the explosion and resulting continuous oil spill;

c. Whether Defendants negligently failed to take reasonable measures to contain the oil spill;

d. Whether Defendants collectively and/or individually owed a duty to the Class Representatives and the Class they seek to represent to maintain the drilling vessel and/or to conduct, *inter alia*, drilling and/or completion operations in a prudent manner so as to prevent the release and/or leak of oil into the surrounding waters.

e. Whether Defendants breached their respective duty(ies) owed to the Plaintiffs;

f. Whether Defendants were negligent, and whether such negligence was a proximate cause of such damages sustained by the Class;

g. Whether Defendants were grossly negligent, and whether such gross negligence was a proximate cause of such damages sustained by the Class;

h. Whether Defendants knew or should have known that their activities would have caused such damage to the Plaintiffs;

i. Whether Defendants (or any of them) are strictly liable or otherwise at fault that is a proximate cause for the damages complained of herein.

23.

Defendants engaged in a common course of conduct that did not vary from plaintiff to plaintiff, ensuring that common questions of law and fact predominate

over questions regarding individual damages and causation, as proof as to one constitutes proof as to all.

### c. Typicality

24.

Class Representatives and the Class members have suffered similar harm as a result of Defendants' actions and/or inaction.

### d. Adequacy of Representation

25.

Class Representatives will fairly and adequately represent and protect the interests of the members of the Class because their interests do not conflict with the interests of the Class members they seek to represent, and said Class Representatives know and are prepared to undertake representation of the interests of the entire class. Class Representatives have no claims antagonistic to those of the Class. Class Representatives have retained counsel who are experienced in complex class actions, mass joinder and/or environmental litigation.

### e. Superiority

26.

A class action is superior to other methods of adjudicating these claims because it is more efficient and economical, and will enable the court to more

effectively manage the litigation, to continue to monitor the oil that is being released on a daily basis and to monitor and address the damages caused thereby.

27.

A class action is also superior since individual litigation of the claims of all Class members is impracticable, as there are believed to be thousands of similarly situated individuals and entities who sustained damages that were proximately caused by the negligence, gross negligence, regulatory and/or statutory violation or fault of one or more of the Defendants. Even if every Class member could afford the cost of individual litigation, the judicial system could not. It would be unduly burdensome to this Court in which individual litigation of thousands of cases would proceed. Individual litigation presents a potential for inconsistent or contradictory judgments, and the prospect of a race for the courthouse and an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation increases the expense and delay to all parties and the court system in resolving the legal and factual issues common to all claims related to the Defendants' conduct alleged herein. By contrast, a class action presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## CLASS CERTIFICATION

### 28.

The various claims asserted in this action are also certifiable under the provisions of Rules 23(b)(1) and/or 23(b)(3) of the Federal Rules of Civil Procedure because:

a. The prosecution of separate actions by thousands of individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, thus establishing incompatible standards of conduct for Defendants;

b. The prosecution of separate actions by individual Class members would also create the risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members who are not parties to such adjudications and would substantially impair or impede their ability to protect their interests.

### 29.

The blow out, explosion and resulting release and/or discharge of approximately 42,000 gallons per day and Plaintiffs' resulting damages were caused by Defendants' violation of numerous statutes and regulations, including, but not limited to, statutes and regulations issued by the United States Occupational Safety and Health Administration, MMS, United States Coast Guard

and of the statutes or regulations of the United States whose purpose is to protect property and persons and/or to prevent or minimize hydrocarbon pollution.

30.

Upon information and belief, the above-described incidents were proximately caused by the combined negligence and/or gross negligence of one or more named Defendants, rendering them jointly, severally and in-solido liable according to the following non-exclusive list of acts and/or omissions:

   a. Failure to provide the Deepwater Horizon with properly trained crew and other personnel.

   b. Failure to properly train and/or supervise its crew and other personnel.

   c. Failure to ensure that the crew and/or other personnel worked in a safe and prudent manner.

   d. Operation of the Deepwater Horizon with untrained and unlicensed personnel.

   e. Failure to provide personnel with a safe workplace, thereby creating hazardous conditions.

   f. Failure to provide sufficient personnel and/or equipment.

   g. Failure to properly supervise operations.

   h. Failure to properly inspect and/or vessel and/or well equipment.

i.  Failure to assure that the equipment and personnel were fit for their intended purpose.

j.  Failure to properly coordinate activities among contractors on board the Deepwater Horizon.

k.  Failure to observe, monitor and read gauges that would have indicated excessive pressures in the well.

l.  Failure to ascertain that the Deepwater Horizon and its equipment were free from defects and/or in proper working order.

m. Failure to promulgate, implement and enforce policies and procedures pertaining to the safe operations of the Deepwater Horizon, which would have averted the fire, explosion and oil spill.

n.  Negligent and/or grossly negligent implementation of policies and procedures to safely conduct offshore operations in the Gulf of Mexico.

o.  Failure to design, construct, maintain and operate the Deepwater Horizon and appurtenances in a reasonable and prudent manner.

p.  Failure to properly operate the Deepwater Horizon.

q.  Failure to exercise due care and caution.

r.  Failure to take action to avoid or mitigate the accident.

s.  Failure to timely warn.

t.  Acting in a careless and negligent manner without due regard for the safety of others.

u.  Failure to avoid this accident.

v.  Failure to react to warning and/or danger signs and in a negligent, grossly negligent and/or wanton manner pressed ahead with completion activity at the risk of life and property.

x.  Operation of the Deepwater Horizon in such a manner that a fire and explosion occurred onboard, causing it to sink and resulting in an oil spill.

y.  Failure to use proper and/or proper weighted drilling muds.

z.  Failure to conduct cementing operations in a safe and proper manner.

aa. Failure to properly install casing and/or use of defective casing.

bb. Negligence and/or strict liability in the design, manufacture, failure to warn, and/or installation or operation or maintenance of the well head system and the blow out preventer/emergency flow control system(s).

cc. Failure to provide blowout preventers (BOPs) that would have and should have prevented the accident.

dd. Failure to provide appropriate accident prevention equipment.

ee. Failure to bring the oil spill under control.

ff. Failure to properly contain the spill.

gg. Failure to have a proper and adequate clean up and oil spill containment plan.

hh. Gross negligence in management control, supervision and direction of the Deepwater Horizon and drilling activities thereon.

ii. Gross negligence for failure to have a spill contingency plan in place, thus rendering Defendants unprepared for a spill of this magnitude.

jj. Gross and wanton negligence so as to justify the imposition of punitive damages.

kk. Other acts of negligence and/or gross negligence, which will be shown more fully at trial.

### 31.

In the alternative, Plaintiffs reallege and reaver each and every allegation set forth above, as though set forth herein aver the applicability of the doctrine of *Res Ipsa Loquitur*.

### 32.

Plaintiffs have and will continue to suffer economic damages as a direct and proximate result of Defendants' negligence and/or gross negligence, and/or strict liability complained of herein. As a result of the above-described negligence and/or gross negligence, the Plaintiffs have sustained (and will continue to sustain) economic losses to date and in the future including but not limited to lost profits.

33.

The injuries to Plaintiffs and the Class were also caused by or aggravated by the fact that Defendants failed to take necessary actions to mitigate the danger associated with their operations.

34.

Plaintiffs are entitled to prejudgment interest on their damages from the dates of loss. As to any damages which the Court determines are not properly subject to an award of prejudgment interest, Plaintiffs demand interest from the date of judicial demand.

35.

Plaintiffs are entitled to recover all costs of these proceedings, including filing fees, expert witness fees, attorney's fees and other court costs and litigation costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Troy Wetzel and Extreme Fishing, LLC, pray that the Defendants, Transocean, BP, Halliburton, Weatherford, Dril-Quip, Cameron, Anadarko, Mitsui, and Triton, be duly cited and served with a copy of the Complaint, that this matter be certified as a class action and that after due proceedings are had there be judgment rendered herein in favor of the Plaintiffs, and the class they represent, and against Defendants in an amount sufficient to

adequately compensate the Plaintiffs, and the class they represent, for their damages together with legal interest thereon from date of judicial demand until paid, for punitive damages, all costs of this suit and for all general and equitable relief.

Dated: May 11, 2010

Respectfully submitted,

**Jonathan Andry, Attorney at Law, LLC**
Jonathan B. Andry, Esq. (LSBA # 20081)
Ashley Philen, Esq. (LSBA # 31285)
610 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 586-8899
Facsimile: (504) 586-8933

**Domengeaux, Wright Roy & Edwards**
By: /s/ *Bob F. Wright* (LSBA # 13691)
James P. Roy (LSBA # 11511)
556 Jefferson Street, Suite 500
P.O. Box 3668
Lafayette, Louisiana 70502-3668
Telephone: (337) 233-3033
Facsimile: (337) 233-2796

**Fayard & Honeycutt, APC**
Calvin C. Fayard, Jr. (LSBA No.5486)
D. Blayne Honeycutt (LSBA No. 18264)
Wanda J. Edwards (LSBA No. 27448)
519 Florida Avenue, SW
Denham Springs, LA 70726
Phone: (225) 664-4193
Facsimile: (225) 664-6925

**O'Donnell & Associates PC**
Pierce O'Donnell, Esq.
Robert Partain, Esq.
800 Wilshire Boulevard, Suite 500
Los Angeles, California 90017
Telephone: (213) 347-0290
Facsimile: (213) 347-0298

**William Strain & Associates**
William S. Strain
422 East Woodstone Court
Baton Rouge, LA 70808
Telephone: (225)939-0163
Facsimile: (225) 767-8150